FILED
JAMES BONINI
CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

2007 NOV -5 P 12: 33

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| ROSECRANCE HEALTH NETWORK )<br>1601 University Drive )<br>Rockford, IL. 61108 )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>NATIONWIDE LIFE INSURANCE )<br>COMPANY d/b/a Nationwide Health Plans )<br>5525 Parkcenter Circle )<br>Dublin OH, 43017 )<br> )<br> )<br>Defendant. ) | Case No. 2 : C 7<br><br>Judge<br><br>Magistrate MAGISTRATE KING |

**COMPLAINT FOR BREACH OF CONTRACT,
DECLARATORY JUDGMENT
AND PUNITIVE DAMAGES**

Plaintiff, ROSECRANCE HEALTH NETWORK ("Rosecrance"), by and through one of

its attorneys, and for its Complaint against Defendant, NATIONWIDE LIFE INSURANCE

COMPANY d/b/a Nationwide Health Plans ("Nationwide") states and alleges as follows:

**NATURE OF THE ACTION**

1.      This Complaint is an action for declaratory judgment, breach of contract, and for

punitive damages based upon the Defendant's vexatious and unreasonable delay in settling an

insurance claim.  Rosecrance seeks the entry of a judgment which declares that a "stop loss"

insurance policy issued by Nationwide requires Nationwide to reimburse Rosecrance for losses it

incurred as a result of an employee's organ transplant expenses.  Rosecrance further seeks the

entry of a judgment in its favor on an action for breach of contract.  Rosecrance further seeks

punitive damages, including costs and attorneys' fees, for Nationwide's vexatious and

unreasonable delay in settling Rosecrance's insurance claim.

## PARTIES

2.      Plaintiff, Rosecrance, is an Illinois not-for-profit corporation with its principal place of business located at 1601 University Drive, in Rockford, Illinois.  Rosecrance is a charitable, tax-exempt entity that provides addiction treatment to adults and adolescents in the Rockford, Illinois area.

3.      Defendant Nationwide is an Ohio corporation with its principal place of business located at 5525 Parkcenter Circle in Dublin, Ohio. Nationwide is in the business of providing health insurance. With more than $157 billion in statutory assets, Nationwide is one of the largest insurance and financial services companies in the world.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. section 1332(a)(1), this Court has original jurisdiction over the subject matter of this action because the matters in controversy exceed the sum of $75,000.00, exclusive of interests and costs, and are between citizens of different states.

5.      Pursuant to 28 U.S.C. sections 1391(a) and (c), venue is proper in this district because jurisdiction is founded upon diversity of citizenship and Nationwide, an Ohio corporation, "resides" within this District by maintaining its principal place of business within this District and thus subjecting itself to personal jurisdiction.

## FACTS

6.      Rosecrance is a self-insured company for employee health insurance purposes and purchases "stop loss" insurance to help manage large or catastrophic claims.

7.      On or about July 1, 2005, Rosecrance entered into a "Stop Loss Insurance Contract" with Nationwide ("the Contract") for excess coverage of unusually expensive employee medical claims.  A true and correct copy of the Contract is attached hereto as Exhibit A.

2

8.     The Contract provides that any disputes concerning the Contract will be governed by Illinois law.

9.     During the relevant period, Rosecrance made timely payment for all policy premiums due under the Contract.

10.     The Contract provides that Rosecrance's self-funded Employee Benefit Plan is "made a part of this Contract." A true and correct copy of Rosecrance's Employee Benefit Plan ("the Rosecrance Plan") is attached hereto as Exhibit B.

11.     The Contract provides "Specific Stop Loss Coverage" for losses incurred by Rosecrance in paying exceptionally large Employee Benefit Plan medical claims, to the extent that the medical claims exceed the Stop Loss policy's stated deductible amount.

12.     The Contract provides Stop Loss coverage for losses Rosecrance incurs as a result of employee medical claims under its Covered Persons Employee Benefit Plan "from July 1, 2005 through August 31, 2006, and Paid from July 1, 2005 through August 31, 2006."

13.     The Contract provides that the "Specific Deductible (Per Person)" for "Specific Stop Loss Coverage" is $60,000.

14.     The Contract provides that the "Specific Percentage Reimbursable (Excess of Deductible)" for "Specific Stop Loss Coverage" is 100%.

15.     The Contract provides that the "Lifetime Maximum Specific Benefit" for "Specific Stop Loss Coverage" is $1,940,000.

16.     The Contract further provides:

COVERAGE PROVISION: If the Policyholder's Losses for the Benefit Period, as shown in the Schedule of Stop Loss, exceeds the Specific Deductible, the Company will reimburse the Policyholder, subject to the terms and conditions of this Contract including the limits in the Schedule of Stop Loss, an amount:

3

> • Equal to the Specific Percentage Reimbursable of Specific Stop Loss times the amount by which Losses exceed the Specific Deductible amount; but
>
> • not to exceed the Lifetime Maximum Specific Benefit.

*Id.* at 16.

17.     The Rosecrance Employee Benefit Plan, by which Rosecrance provides its employees with insurance coverage for their medical expenses, defines a "covered person" as "[t]he *employee* or any *dependent*, when you are properly enrolled in the *plan*."

18.     The Rosecrance Plan provides that covered expenses for Rosecrance employees include "[c]harges made for [certain] services furnished during your hospital confinement... as shown on the schedule of benefits." Ex. B at § 1-18.

19.     Mr. William Boykin ("Mr. Boykin") was an employee of Rosecrance from October 26, 1993 through January 19, 2006.

20.     During his employment with Rosecrance, Mr. Boykin developed a liver condition that would eventually require a liver transplant.

21.     On or about June 8, 2005, while Rosecrance was negotiating the acquisition of Stop Loss Coverage from Defendant Nationwide, Rosecrance disclosed Mr. Boykin's liver condition to Nationwide.

22.     As a result of Mr. Boykin's known and disclosed liver condition, Nationwide specifically negotiated and contracted for a deductible of $135,000 for Mr. Boykin, as opposed to the $60,000 group deductible.

23.     The Contract, in pertinent part, thus expressly provides "Special Limitations" to the Stop Loss Coverage for medical claims of Mr. Boykin. Specifically, the Contract provides:

4

> With respect to the Covered Person whose Name is <u>William</u> <u>Boykin, the following alterations to the Schedule of Stop Loss</u> <u>apply only if such</u> <u>Covered Person receives a liver transplant</u>:
>
> Specific Deductible (per covered person) <u>$135,000</u>.
>
> Lifetime Maximum Specific Benefit <u>$1,865,000</u>.
>
> All other Schedule of Stop Loss and Contract provisions apply as stated.

Ex. A at 3-4 (emphasis added). The Contract expressly states that the $135,000 "alteration[] to the Schedule of Stop Loss [is applicable] only if such Covered Person receives a liver transplant."

24.     The Contract also incorporates a "Disclosure Statement" of employees for whom its "Actively at Work" provisions are expressly waived; Mr. Boykin's name appears on that Disclosure Statement.   A true and correct copy of the relevant portions of the Disclosure Statement (redacted to remove the names of other employees for confidentiality reasons) is attached hereto as Exhibit C.

25.     On September 16, 2005, Mr. Boykin was notified by his medical professionals that a liver transplant was available. On that same day, Mr. Boykin entered the University of Wisconsin Hospital ("UWHC").

26.     Due to his medical condition and treatment, Mr. Boykin would be unable to work for some time; accordingly, on September 16, 2005 he took a medical leave under the Family Medical Leave Act ("FMLA").

27.     On September 17, 2005, Mr. Boykin underwent an orthotropic liver transplant at the University of Wisconsin Hospital and Clinics in Madison, Wisconsin ("UWHC").   He thereafter suffered a series of complications, and was re-admitted to the UWHC on November 23, 2005, where he remained until January 26, 2006.

28.     Mr. Boykin's FMLA leave expired on December 8, 2005, while he was hospitalized at UWHC.

29.     On December 1, 2005, Rosecrance received a faxed letter dated November 30, 2005, from Mr. Boykin's treating physician, Dr. Stuart J. Knecht, in which Dr. Knecht requested that Rosecrance "extend Mr. Boykin's unpaid time off as "a reasonable accommodation under the ADA." A true and correct copy of Dr. Knecht's letter to Rosecrance is attached hereto as Exhibit D. Specifically, Dr. Knecht's letter requested, in pertinent part, as follows:

> I am requesting that as a reasonable accommodation. under the Americans with Disabilities Act that you extend Mr. Boykin's unpaid time off. I estimate at this point Mr. Boykin will need four to six more weeks off before he would be able to return to work.

Ex. D.

30.     Under the FMLA, "[i]f an employee is a qualified individual with a disability within the meaning of the Americans with Disabilities Act, the employer must make reasonable accommodations, etc…[and] [a]t the same time the employer must afford an employee his or her FMLA rights." 29 CFR §825.702(b) (further recognizing that "the ADA allows an indeterminate amount of leave" as a reasonable accommodation, irrespective of the FMLA 12 week leave limitation).

31.     FMLA regulations require employers to maintain health insurance during FMLA leave on the same conditions as coverage would have been provided if the employee had been continuously employed during the leave period, whereas the ADA does not require maintenance of health insurance **unless other employees receive health insurance during leave under the same circumstances**. *Id.* (emphasis added).

32.     Rosecrance investigated and deliberated over Mr. Boykin's circumstances, and subsequently granted his request for a reasonable accommodation under the FMLA and ADA by extending Mr. Boykin's leave by five (5) weeks, or until January 19, 2006.

33.     Consistent with its prior treatment of other similarly situated employees, Rosecrance maintained health insurance coverage for Mr. Boykin under the Rosecrance Plan during the extended leave period.

34.     Rosecrance, through its third-party administrator, HCH Administration, Inc. ("HCH"), timely submitted all necessary documentation to Nationwide concerning Mr. Boykin's hospitalization, seeking reimbursement under the Contract for Rosecrance's losses resulting from Mr. Boykin's November 23, 2005 through January 26, 2006 hospitalization, to the extent they exceeded the $135,000 deductible.

35.     The submission of documentation to Nationwide began on November 30, 2005.

36.     On April 28, 2006, Ronald Geck ("Geck") of RMTS, LLC, an agent for Nationwide ("RMTS"), orally indicated that Nationwide would not provide coverage for the full amount of the Stop Loss Contract claim. Thereafter, in a letter dated May 4, 2006, Geck again denied Rosecrance's demand for reimbursement for its losses arising from payment of Mr. Boykin's claim under the Rosecrance Plan for Mr. Boykin's hospitalization at UWHC. A true and correct copy of the letter, dated May 4, 2006, is attached hereto as Exhibit E.

37.     On July 12, 2006, Rosecrance responded that Nationwide's denial of the claim was erroneous, arbitrary and capricious, and in violation of the terms of its policy as well as federal and state law. A true and correct copy of the letter, dated July 12, 2006, is attached hereto as Exhibit F.

38.     In a letter dated August 3, 2006, Christopher Wasson from Nationwide reiterated Nationwide's position denying the claim. A true and correct copy of the letter, dated August 3, 2006, is attached hereto as Exhibit G.

## COUNT 1 - DECLARATORY JUDGMENT

39.     Rosecrance incorporates by reference and re-alleges paragraphs 1 - 38, as if fully set forth herein.

40.     Rosecrance and Nationwide are parties to this action and have the capacity to contract under Illinois law.

41.     On or about July 1, 2005, Rosecrance entered into a "Stop Loss Insurance Contract" with Nationwide to cover losses from excessively large medical claims under the Rosecrance self-insured Employee Benefit Plan.

42.     Rosecrance performed all of its obligations under the Contract, including the timely payment of all premiums due to Nationwide under the Contract.

43.     Mr. Boykin was an employee of Rosecrance, insured under the Rosecrance Plan when he was hospitalized for his 2005 liver transplant.

44.     At the time Nationwide negotiated the Stop Loss Contract terms with Rosecrance, Nationwide was aware of Mr. Boykin's liver condition and need for a transplant; Nationwide negotiated for a special deductible and special lifetime maximum benefit for Mr. Boykin which were to apply to a liver transplant. Those special terms, which are applicable only to Mr. Boykin, appear on the face of the Contract.

45.     Rosecrance incurred losses in excess of the $135,000 Contract deductible as a result of Mr. Boykin's medical claim under the Rosecrance Plan; the losses were incurred and paid by Rosecrance during the Stop Loss Contract benefit period.

8

46.     Despite repeated demands by Rosecrance that Nationwide comply with its obligations under the Contract to provide payment for Rosecrance's losses in excess of the policy deductible, Nationwide has refused to do so.

47.     There is an actual and justiciable controversy between Rosecrance and Nationwide concerning the parties' obligations under the Contract.

48.     Rosecrance has an interest in this claim and Nationwide has an interest in opposing this claim.

49.     Rosecrance has made a definite assertion of its legal right to be reimbursed for "[c]harges made for [certain] services furnished during [Mr. Boykin's] hospital confinement," as shown on the schedule of benefits to the Contract. Nationwide has denied Rosecrance's legal right to be reimbursed for "[c]harges made for [certain] services furnished during [Mr. Boykin's] hospital confinement," as shown on the schedule of benefits to the Contract.

50.     The action between Rosecrance and Nationwide is adversarial in character.

51.     The controversy between Rosecrance and Nationwide is *bona fide*.

52.     A declaratory judgment of the rights and obligations of Rosecrance and Nationwide will not prejudice the rights of persons not parties to the proceeding.

53.     Entry of a declaratory judgment that Nationwide is obligated, under the Contract, to reimburse Rosecrance for its losses stemming from Mr. Boykin's medical claim under the Rosecrance Plan, in the amount of $619,777.43, less any amount previously paid by Defendant to Rosecrance on the Claim, would terminate the uncertainty or controversy giving rise to the proceeding.

54.     Rosecrance therefore respectfully requests that the Court determine and declare that Nationwide has an obligation under the Contract to reimburse Rosecrance for "[c]harges

made for [certain] services furnished during [Mr. Boykin's] hospital confinement," as shown on the schedule of benefits to the Contract.

WHEREFORE, Plaintiff, Rosecrance  prays that the Court:

a) Enter a judgment declaring that Nationwide is obligated, under the Contract, to reimburse Rosecrance for its losses resulting from Mr. Boykin's claim for hospitalization charges, in the amount of $619,777.43, less any amount previously paid by Defendant to Rosecrance on the Claim; and

b) Award Rosecrance such other and further relief as the Court deems just.

## COUNT II – BREACH OF CONTRACT

55. Rosecrance incorporates by reference and re-alleges paragraphs 1 - 54, as if fully set forth herein.

56. Rosecrance has satisfied every material obligation it owed to Nationwide arising out of the Contract.

57. Rosecrance has appropriately made demand upon Nationwide for benefits arising out of the Contract.

58. Nationwide refuses to perform obligations it owes to Rosecrance arising out of the Contract.

WHEREFORE, Plaintiff Rosecrance prays that the Court:

a) Enter a judgment finding that Nationwide's refusal to pay benefits owed under the Contract to Rosecrance is a breach of Contract, and further finding that Nationwide is liable to Rosecrance in the amount of $619,777.43 in damages, less any amount previously paid by Nationwide to Rosecrance on the Claim; and

b) Award Rosecrance such other and further relief as the Court deems just.

## COUNT III - VEXATIOUS AND UNREASONABLE DELAY IN SETTLING AN INSURANCE CLAIM

59. Rosecrance incorporates by reference and re-alleges paragraphs 1 - 58, as if fully set forth herein.

60.     Section 155 of the Illinois Insurance Code permits actions against insurance companies that refuse to settle insurance claims in an unreasonable and vexatious manner. Specifically, Section 155, in pertinent part, provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed anyone of the following amounts:
>
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $60,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155.

61.     In November of 2005, Nationwide had notice of Rosecrance's claim under the Contract for losses Rosecrance incurred as a result of Mr. Boykin's medical claims under the Rosecrance Plan.

62.     At no time before February 3, 2006, did Nationwide notify Rosecrance that its claim under the Contract may not be paid.

63.     On February 3, 2006, Marcia Horton, a representative of HCH, contacted Rosecrance to notify Rosecrance that there were questions about Rosecrance's claim under the Stop Loss Contract.

64.     On March 16, 2006, April 19, 2006, May 4, 2006 and August 3, 2006, Nationwide repeatedly and unreasonably refused to settle Rosecrance's claim under the Contract.

11

65.     Nationwide's delay in settling Rosecrance's claim under the Contract has been unreasonable and vexatious.

66.     Despite the fact that the Contract expressly includes special terms for Stop Loss Coverage "if [Mr. Boykin] receives a liver transplant," Nationwide stated in an August 3, 2006 letter to Rosecrance that one of the reasons it was refusing to pay the claim was that Nationwide had believed "it was unlikely that Mr. Boykin would have a liver transplant during the contract year effective July 1, 2005." Ex. A at 3-4; Ex. G at 2.

67.     Nationwide thereafter asserted that it was refusing to pay the claim because Mr. Boykin did not meet the Contract's "Actively at Work" criterion, notwithstanding the fact that on its face the Contract provides that the "Actively at Work" provision does not apply to individuals identified on the attached disclosure statement, on which Mr. Boykin's name appears.

68.     Nationwide's delay in settling Rosecrance's claim under the Contract has been in bad faith. The Contract expressly provides for coverage in the event Mr. Boykin receives a liver transplant, and the parties negotiated a greater than 100% increase in the deductible which was to apply if Mr. Boykin received a liver transplant. Nationwide has nevertheless refused to settle Rosecrance's claim because Nationwide thought it was "unlikely that Mr. Boykin would have a liver transplant during the contract year effective July 1, 2005."

69.     Because Nationwide miscalculated the odds that Mr. Boykin would receive a liver transplant during the Contract term, Nationwide has refused to settle Rosecrance's claim in bad faith.

70.     Nationwide's unreasonable and vexatious delay in settling, and bad faith refusal to settle, is made more egregious by the fact that Rosecrance is a not-for-profit health care entity.

12

As such, Nationwide's refusal to settle Rosecrance's claim has harmed and continues to harm the public interest.

WHEREFORE, Plaintiff Rosecrance prays that the Court:

      a.     Find that Nationwide's delay in settling Rosecrance's claim under the Contract for losses Rosecrance occurred as a result of Mr. Boykin's hospital confinement has been unreasonable and vexatious;

      b.     Award Rosecrance the $619,777.43, less any amount previously paid by Defendant to Rosecrance on the Claim for charges made for services resulting from Mr. Boykin's hospital confinement;

      c.     Award Rosecrance its taxable costs, including, but not limited to its reasonable attorneys fees;

      d.     Award Rosecrance punitive damages to the maximum amount allowed under 215 ILCS 5/155; and

      e.     Award Rosecrance such other and further relief as the Court deems just.

Michael D. Dortch (0043897)
KRAVITZ, BROWN & DORTCH, llc
65 East State Street
Suite 200
Columbus, OH 43215
614.464.2000
614.464.2002
mdortch@kravitzllc.com

Attorneys for
ROSECRANCE HEALTH NETWORK