IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ROSECRANCE HEALTH NETWORK,** : | |
| : | |
| Plaintiff, : | |
| : | Case No. 2:07-CV-1140 |
| v. : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **NATIONWIDE LIFE INSURANCE** : | Magistrate Judge Abel |
| **COMPANY d/b/a/ Nationwide Health Plans** : | |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Defendant Nationwide Life Insurance Company's d/b/a/ Nationwide Health Plans ("Nationwide") Motion for Reconsideration of the Court's Opinion and Order Dated March 23, 2009. On March 23, 2009, this Court granted Plaintiff Rosecrance Health Network's ("Rosecrance") Motion for Judgment on the Pleadings and denied Defendant Nationwide's Motion for Judgment on the Pleadings. Nationwide moves for reconsideration of the Court's decision. For the reasons set forth below, Nationwide's Motion for Reconsideration is **GRANTED in PART** and **DENIED in PART**.

**II. BACKGROUND**

**A. Factual Background**

This action arises from a denial of coverage under an excess insurance policy purchased by Rosecrance from Nationwide. Rosecrance provides health insurance coverage to its employees under a self-funded insurance plan ("the Plan"). Rosereance's Plan defines the terms of its health insurance benefits coverage for its employees.

On July 1, 2005, Rosecrance purchased an excess insurance policy (the "Stop Loss Policy") from Nationwide to cover losses incurred in connection with large, unmanageable, or catastrophic employee health care claims under its self-funded plan. The parties entered into a contract that defined the terms of the Stop Loss Policy (the "Contract" or "Stop Loss Contract"). The Contract covered the period of July 1, 2005 through August 31, 2006.

William Boykin ("Boykin") was an employee of Rosecrance from 1993 through January 19, 2006, and was a participant in the Plan. Boykin entered the hospital on September 16, 2005 for a liver transplant. He took a medical leave of absence from Rosecrance on that date, pursuant to the Family and Medical Leave Act ("FMLA"). Boykin remained hospitalized until his discharge on October 5, 2005. After being discharged, Boykin suffered a series of complications and was re-admitted to the hospital on November 23, 2005, where he remained until January 26, 2006.

During this second hospitalization, on December 8, 2005, Boykin's twelve weeks of FMLA leave expired. On December 8th, Rosecrance extended Boykin's leave of absence for an additional six weeks. Rosecrance also extended Boykin's medical insurance coverage under its Plan for the duration of the leave of absence. On January 20, 2006, Rosecrance terminated Boykin. On January 26th, Boykin was discharged from the hospital.

After Boykin's discharge from the hospital, Rosecrance paid the charges for his hospitalization. Rosecrance timely submitted the necessary documentation concerning the hospitalization charges to Nationwide, seeking reimbursement under the Contract for its losses resulting from the claim, totaling $754,777.43. Of that amount, $135,000 was subtracted as the specific stop loss deductible for Boykin. Of the remaining $619,777.43, Nationwide paid

$237,200.23 for reimbursement of what it deemed to be eligible benefits arising from the September 16, 2005 through October 5, 2005 hospitalization. Nationwide denied all coverage for Rosecrance's losses of $382,577.20 arising from Boykin's November 23, 2005 through January 26, 2006 hospitalization. Nationwide asserted those charges were "incurred" after December 8, 2005, and after that date, Boykin was ineligible for Plan benefits and was not a "Covered Person" under the Contract.

## B. PROCEDURAL BACKGROUND

On November 5, 2007, Rosecrance filed suit against Nationwide, alleging three counts arising from the partial denial of Rosecrance's claims for reimbursement:

1. Declaratory judgment that Nationwide must fully reimburse Rosecrance for its claims relating to Boykin under the terms of the Contract;

2. Breach of Contract for Nationwide's failure to fully reimburse Rosecrance; and

3. Violation of Illinois Insurance Code's prohibition against vexatious and unreasonable insurance claims settlement practices.

Nationwide filed an Answer and Counterclaim, alleging two counts of relief against Rosecrance:

1. Declaratory judgment that Nationwide fully complied with the terms of the Contract and properly denied Rosecrance's claims; and

2. Declaratory judgment that Nationwide's conduct does not violate the Illinois Insurance Code.

Rosecrance filed a Motion for Judgment on the Pleadings as to Count I of the Complaint and Count I of the Counterclaim. Nationwide subsequently filed a Motion for Judgment on the Pleadings. On March 23, 2009, this Court granted Rosecrance's Motion for Judgment on the Pleadings and denied Nationwide's Motion for Judgment on the Pleadings. On April 8, 2009,

Nationwide filed a Motion for Reconsideration.

## III. STANDARD OF REVIEW

The Federal Rules do not expressly provide for "Motions to Reconsider." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F.App'x 949, 959 (6th Cir. 2004). Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Id*. Motions for reconsideration serve a limited function. Generally, a motion for reconsideration is only warranted when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. *Id*. Motions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier. *See J.P. v. Taft*, No. C2-04-692, 2006 WL 689091, at *13 (S.D. Ohio Mar. 15, 2006).

## IV. LAW AND ANALYSIS

Nationwide does not assert any change in controlling law or new evidence in support of its Motion to Reconsider. Instead, Nationwide argues that the Court's determination that Boykin was entitled to medical benefits pursuant to a section of the Plan entitled "Special Provisions for Not Being Actively At Work" ("Special Provision") was clear error and manifestly unjust. Nationwide contends that: (1) the Court's interpretation of the Special Provision was clear error; (2) that the Court's application of its interpretation of the Special Provision to Boykin's situation was clear error; (3) and that it's finding of covered benefits for Boykin was clear error.

### A. Interpretation of the Special Provision

Rosecrance and Nationwide both filed Motions for Judgment on the Pleadings declaring

that Count I of the Complaint and Count I of the Counterclaim both presented only questions of law to be decided by the Court. (Pl. Mot. for Jud. pp. 6-7; Def. Mot. for Jud. p. 1.) Both parties requested that the Court determine whether, under the Contract, Nationwide is liable for the costs Rosecrance incurred with respect to Boykin. Nationwide specifically stated: "all of the claims of the parties in this action require this Court to interpret the terms of the parties' Contract. The case presents only a question of law and no material issues of fact exist." (Def. Mot. for Jud. p. 1.)

Nationwide now contends, however, that the Court should have not have interpreted the Plan as providing authorization for Rosecrance to provide seriously ill employees with extended medical leaves. The fact that Nationwide would construe the Contract differently is an insufficient basis for reconsideration, particularly when the parties asked the Court to construe the Contract when they filed actions for Declaratory Judgment and later, Motions for Judgment on the Pleadings.

Under Illinois law, the construction of an insurance policy is a question of law. *Outboard Marine Corp. v. Liberty Mutual Ins. Corp.*, 607 N.E.2d 1204, 1212 (Ill. 1992). In construing insurance contracts, the court must ascertain the intent of the parties. *Id.* "To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole . . . with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *Id.*

Rosecrance's primary argument in its Motion for Judgment on the Pleadings was that the Contract should be interpreted so that the Special Limitations Clause of the Contract entered into

by Rosecrance and Nationwide waived the *Actively at Work*[1] provision of the Plan. (Pl. Mot. for Jud. p. 7.) Due to this, Rosecrance asserted that Boykin was not required to be *Actively at Work* to receive coverage. (*Id*. p. 8.) The Court found this interpretation did not make sense because, among other reasons, the Contract, which was not a part of the Plan, could not operate "to expand coverage under the Plan by waiving terms of the Plan." *Rosecrance Health Network v. Nationwide Life Ins. Co.*, No. 2:07-CV-1140, 2009 WL 799076, at *5 (S.D. Ohio March 23, 2009). The Court determined that the only reasonable interpretation of the Special Limitations Clause was that it "only waived the Contract's 'Actively at Work' provision and did not waive the Plan's *Actively at Work* provision." *Id.*

The Special Provision section of the Plan, however, dealt with a situation when an employee does not qualify as being *Actively at Work*. It stated:

> If you continue to pay the required plan contributions, your coverage will remain in force for no longer than two months during an approved, non-military leave of absence, layoff, or period of total disability. Coverage that is required by the Family and Medical Leave Act will reduce any period shown above.

(Plan 3-4). The FMLA grants up to twelve weeks a year of leave for, inter alia, an employee taking leave due to a serious medical condition. (*Id.* 3-6). The FMLA "requires that coverage under [the Plan] be continued during a period of approved FMLA leave." (*Id.*). An employee could receive medical coverage for up to twelve weeks if on FMLA leave.

Nationwide's primary argument was that once Boykin's twelve weeks of FMLA leave expired on December 8, 2005, his eligibility for benefits under the Plan also expired. (Def. Mot. For Jud. p. 7.) Because he was not eligible for benefits, Nationwide contended that it did not

---

[1] An employee was defined as being *Actively at Work* if he or she was, "[p]erforming on a regular, full-time basis all normal employment duties for at least 40 hours per week." (Plan 2-1.)

have to reimburse Rosecrance for any of his medical expenses incurred for Boykin's second medical stay between November 23, 2005 and January 26, 2006. (*Id.* p. 9.)

This Court found that there were two reasonable ways to interpret the Special Provision:

(1) An employee can only take up to two months of medically covered non-FMLA leave **in a year**. However, if an employee takes any FMLA leave that year, that reduces the amount of medically covered non-FMLA leave an employee can take **that year**.

> For instance, if an employee takes one month of FMLA leave, then the employee can only take one more month of medically covered non-FMLA leave that year. Or, if an employee takes two months of FMLA leave, then the employee cannot take any medically covered non-FMLA leave that year.

(2) An employee can only take up to two months of medically covered non-FMLA leave **at a time**. However, if an employee takes any FMLA leave during that two month period of time, that reduces the amount of medically covered non-FMLA leave the employee can take **at that time**.

> For instance, if an employee takes one month of FMLA leave, then that employee can only take one more month of medically covered non-FMLA leave at that time; if instead, however, the employee took medically covered non-FMLA leave at a later point in time that year, the employee could take two months of such leave.

*Rosecrance,* 2009 WL 799076 at *5.

Under both interpretations, an employee would receive three months of FMLA leave in a year, and up to two months of medically covered approved non-FMLA leave either in a year or at a time, reduced by the amount of FMLA leave used either in a year or at that time. In other words:

(A) A person can only be approved by Plaintiff to take up to two months of medically covered non-FMLA leave **in a year**, and the option becomes non-existent if the person has already used two months of FMLA leave **at any point that year**; or

(B) A person can only be approved by Plaintiff to take up to two months of medically covered non-FMLA leave **at a time**, and the option becomes non-existent if the person has already used two months of FMLA leave **at that time**.

*Id.* at *6.

This Court determined that the Special Provision was ambiguous because it was susceptible to two reasonable interpretations. *Id.* Nationwide acknowledges that contractual interpretation is a matter of law, but asserts that is "only when an <u>unambiguous</u> contract provision is involved." (Def. Reply p. 2.) Nationwide contends that once this Court concluded the Plan's Special Provision was ambiguous and capable of multiple interpretations, the Court's analysis should have ended and the Court should have denied the Cross-Motions for Judgment on the Pleadings.

Illinois case law has clearly established that the Court must determine whether insurance contracts are reasonably susceptible to more than one meaning. *See, e.g., Rich v. Principal life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997); *Outboard Marine*, 607 N.E.2d at 1213. If the court finds the insurance contract is ambiguous, the court can either strictly construe the policy against the drafter, or, if the court finds the anti-drafter rule to be inappropriate, as this Court did in the case sub judice, then the court can interpret the ambiguity according to general principles governing contract interpretation. *See, e.g., Baxter Intern., Inc. v. Am. Guar. and Liab. Ins. Co.*, 861 N.E.2d 263, 269 (Ill. Ct. App. 2006); *Alberto-Culver Co. v. Aon Corp.*, 812 N.E.2d 369, 378 (Ill. Ct. App. 2004).

This Court determined that the anti-drafter rule was not applicable in this case and decided, therefore, that to interpret the ambiguous provision, it must construe the policy as a whole "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." *See Outboard Marine*, 607 N.E.2d at 1212. This Court considered the

type of insurance purchased, the overall purpose of the contract, the risks involved for each of the parties, and the contractual language. *See Rich*, 875 N.E.2d at 1090. Nationwide's assertion that it was clear error of law for this Court to interpret the ambiguous provision according to general principles governing contract interpretation is therefore not well taken.

Nationwide also contends that even if this Court had authority to interpret the ambiguous provision, it was only allowed to interpret the provision in a way advanced by one of the parties. Nationwide contends that it was clear error and manifestly unjust for the Court to grant judgment on a basis that was never advanced by the parties. This Court is not bound by the contract interpretations advanced by the parties. In *Southern Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667 (7th Cir. 2002), the district court raised a contractual provision issue, which neither of the parties had raised. *Id.* at 677 The Seventh Circuit found:

> [T]he district court's decision to raise this issue, in and of itself, was not erroneous. While district courts must be careful not to create the impression that they are taking an advocacy position on a particular issue, they are not required to ignore contractual provisions or applicable law. . . . [O]ne could wonder why Triangle's attorney chose not to raise the remedy limitation issue. Whatever the reason, the district court was certainly permitted to do so.

*Id.*; *see also Jones v. Page*, 76 F.3d 831, 850 (7th Cir. 1996) (internal citations omitted) (holding that "while a judge should never engage in advocacy from the bench, he or she has an obligation to raise legal issues that the parties have over-looked or neglected. After all, the judge is on the bench in the first place (we trust) because of superior legal background, expertise, or credentials, and for that reason "[should] not sit as a passive observer who functions solely when called upon by the parties"). If a district court considers contractual language that raises a potentially serious conflict that the parties have not addressed, its inquiry into that language is "entirely appropriate

and probably necessary." *Filipowicz v. Am. Stores Ben. Plans Comm.*, 56 F.3d 807, 812-13 (7th Cir. 1995)

It is not clear from reading the Special Provision whether the FMLA leave an employee uses reduces the amount of medically covered non-FMLA leave an employee can take at any point that year, or whether it only reduces the amount of non-FMLA leave the employee can take at that time. This ambiguity exists because the Special Provision fails to specify whether it grants up to two months of medically covered non-FMLA leave in a year or two months of medically covered non-FMLA leave at a time. After considering the type of insurance purchased, the overall purpose of the Contract, the risks involved for each of the parties, and the contractual language, this Court found that the intent of the parties was to grant Rosecrance discretion under the Special Provision to approve a medically covered leave of absence for up to a two month period, even if such leave was non-FMLA qualifying, and even if all FMLA leave had already been used at a prior time. *Rosecrance*, 2009 WL 799076 at \*\*8-9. This interpretation, though contrary to Nationwide's preference, was not clear error.

### B. Application of the Special Provision to Boykin

Nationwide argues, however, that whether an employee's FMLA leave reduces the amount of non-medical leave the employee may take only at the same time as the FMLA leave, or whether it reduces the amount of non-medical leave the employee may take at any time that year, makes no difference as applied to the facts of this case. Nationwide asserts:

> The parties agree that Mr. Boykin took FMLA leave on September 16, 2005, due to a serious medical condition—his organ transplant. He took a single leave of absence and never returned to work. His FMLA leave expired on December 8, 2005.

(Def. Mot. p. 10.)

-10-

This Court's Opinion and Order finding Rosecrance was entitled to reimbursement for coverage of Boykin for his second hospital stay through January 19, 2006 was based on the fact that Boykin took two separate FMLA leaves of absence. Boykin began his FMLA leave on September 16, 2005, and was discharged from the hospital on October 5, 2005. This Court assumed that he returned to work, ending his FMLA leave. This Court then assumed that he began a second FMLA leave when he reentered the hospital on November 23, 2005. Nationwide has pointed out to this Court that Boykin was on FMLA leave beginning September 16, 2005, and such leave was uninterrupted until its expiration on December 8, 2005.

Because Boykin had been on FMLA leave between September 16, 2005 and December 8, 2005, when his FMLA leave expired on December 8, 2005, Rosecrance could not grant him an additional two months of medically covered non-FMLA leave at that time. This Court therefore erred in its application of the Special Provision to Boykin. Any payments of Boykin's medical bills incurred after December 8, 2005 were payments not made in accordance with the Plan. As such, Nationwide was not obligated to reimburse Rosecrance for such payments pursuant to the Contract.

### C. Covered Benefits for Boykin

Nationwide was not obligated to reimburse Rosecrance for payments of Boykin's medical bills incurred after December 8, 2005. Nationwide was, however, obligated to reimburse Rosecrance for payments of Boykin's medical bills incurred under the Plan between November 23, 2005 and December 8, 2005.[2] Nationwide was responsible for reimbursing Rosecrance for

---

[2]There is an exclusion under the Contract that excludes amounts paid for Covered Persons who do not receive a valid COBRA extension offer within 30 days immediately following a COBRA qualifying event. (Contract p. 13.) This exclusion is not applicable in this

charges paid for employees entitled to benefits under the Plan. Therefore, Nationwide was responsible for reimbursing Rosecrance for Boykin's medical expenses through December 8, 2005, as he was entitled to benefits through that date.[3]

### D. Illinois Insurance Code Claim

Both parties agree that there are material issues of fact that would preclude judgment on the pleadings as to the Illinois Insurance Code claim should the Court grant judgment for Rosecrance. Because this Court has found that Nationwide was obligated to reimburse Rosecrance for payments incurred under the Plan between November 23, 2005 and December 8, 2005, there are material issues of fact as to whether Nationwide can be found liable for vexatious and unreasonable conduct in not making payments for bills incurred under the Plan during that time period.

### V. CONCLUSION

Upon review of its Opinion and Order dated March 23, 2009, the Court concludes that

---

case to the time period specified because both parties have agreed that any COBRA qualifying event did not occur until December 9, 2005, once FMLA coverage ended. Any payments for bills incurred between November 23, 2005 and December 8, 2005 were not payments that could be eligible for COBRA coverage, and are thus not subject to the COBRA coverage exclusion.

To the extent that Nationwide is arguing that it should not have to reimburse Rosecrance for Boykin's medical bills through December 8, 2005 because Rosecrance did not issue Boykin timely COBRA notice after that date, such argument has no merit. If Rosecrance had untimely issued such notice, and Boykin accepted the offer of COBRA coverage, then Rosecrance sought reimbursement for payments during the COBRA coverage period time, then, and only then, would this exclusion would apply.

[3]This Court previously analyzed the difference between when a bill was incurred under the Plan with when a bill was incurred under the Contract. *See Rosecrance*, 2009 WL 799076 at **10-11. This Court found that Nationwide was responsible for reimbursing Rosecrance for all medical bills for persons entitled to benefits for the time period of such entitlement, even if once the person was discharged from the hospital he was no longer entitled to benefits. *Id.* at *11.

there was error in determining that Nationwide was obligated to reimburse Rosecrance for medical expenses of Boykin incurred after December 8, 2005. This Court based its Opinion and Order on the fact that Boykin had taken two separate FMLA leaves of absence, when in actuality, he had been on only one extended FMLA leave of absence. This determination, however, does not alter this Court's earlier holding that Nationwide is obligated to reimburse Rosecrance for medical expenses of Boykin incurred under the Plan between November 23, 2005 and December 8, 2005. This also does not alter this Court's earlier holding that there are material issues of fact that preclude judgment on the pleadings for the Illinois Insurance Code claim. For the foregoing reasons, Nationwide's Motion for Reconsideration is **GRANTED in PART** and **DENIED in PART**.

    **IT IS SO ORDERED.**

                                                      s/Algenon L. Marbley
                                                      **ALGENON L. MARBLEY**
                                                      **UNITED STATES DISTRICT JUDGE**

    **DATED: September 16, 2009**